Good morning, Your Honors. Doug Gault for Appellant Center Surety Company. I'd like to reserve five minutes for rebuttal. Fine. An issue in this case is whether the parties intended to transfer a specific risk of liability. Is that the issue, or is the issue in this case whether carbon monoxide is an irritant or a toxin? Well, that's the issue, isn't it? And you didn't raise it. Pardon me? You didn't raise it. Well, because I, there's Because let's go to the policy, if you will. The policy defines pollutant as follows. Any solid, liquid, gaseous, not gas, but gaseous or thermal irritant, including smoke, vapor, soot, fumes, acid, alkalized chemicals, and waste. So to me, the opening and closing of this case rests on an operative word, irritant. Let me repeat that. Pollutant means any solid, liquid, gaseous, or thermal irritant, including smoke, vapor, soot, fumes, acid, alkalized chemicals, and waste. So I say to my clerks, is carbon monoxide an irritant? Go to the record. Find it. Is it in the record? Am I going to find it in the record? You'll find it. Fortunately, this ground has already been trod by the Fifth Circuit in the Nautilus case, where they dealt with a very similar claim, carbon monoxide poisoning inside an apartment. And the Court had no trouble holding, as a matter of law, that carbon monoxide is an irritant and found that the claim was barred by the pollution exclusion in that case. And there are a number of other cases that have gone just the opposite in terms of determining whether it is or is not an irritant. And the dictionary says that carbon monoxide is a toxin. So what's a toxin? Well, a toxin is something that's toxic. And that, by definition, is what carbon monoxide is. And carbon monoxide is the toxic, right? Right. The coroner in this case found that the decedents perished because of the toxic quality of carbon monoxide. Right. Well, why? We really have to determine Nevada law in this, though, right? So, I mean, because it doesn't really matter. You know, that's what we have to do. We've got to put the card up to our head and say, what's Nevada law on this issue? And what do we have to help us on this? Well, we have the general rules of contract construction, which in Nevada law ---- But we have no specific case, right? That's correct. So why shouldn't we just certify this and have Nevada tell us? Because I don't think it's a hard case. The cases ---- Well, if it's not hard, why all over the country are people going in different directions? They went in different directions on an earlier version of the pollution exclusion. First of all, we have two exclusions here. Keep that in mind. The pollution exclusion, which is part of the industry form and which you find repeatedly in cases. The split that we found in the case law has to do with an earlier form. There's only one case that we found that deals with the version of the form that exists in this case. That's the Nautilus case. There's no contrary authority. And the Fifth Circuit in the Nautilus case had no difficulty finding that because the provision had been altered to include the building heater exception, that it clarified that the pollution exclusion is not intended to deal solely with external environmental issues, but also to deal with contaminants, toxins inside buildings. So whether this is a contaminant or a toxin is not relevant. The question is whether it's an irritant. But let me ask you, is the pool an interior pool or an exterior pool? An interior pool. So by necessity, heat from the pool is going to provide ambient heat for the building to some degree or another, correct? Well, I, the exclusion says a heater used, equipment used to heat the building. Well, that says seven. By definition, is equipment used to heat the pool. I think it's. Well, wait a second. I mean, come on, let's not parse that finely. I mean, I think if you put the pool outdoors, I guess I'd start saying, okay, let's parse it that finely. But if the pool is indoors, I think it's getting a little tough for you to say, well, this doesn't heat the building. I've given you that it's not exclusively to heat the building. It's exclusively intended to heat a part of the building, the pool part. But I'll give you that. We do know. You can understand that it's not, when you tell us it's an easy case. I do understand Your Honor's point. We are guided by the rule that we're not supposed to strain policy language. Right. And if we do strain it, we're supposed to strain it in whose direction? Well. Against you. If you find an ambiguity. Kind of a contra preferentum. If you find an ambiguity first, then you can screw it against the drafter. But first you have to find an ambiguity. Well, but the indoor air quality exclusion seems to conflict with the building heating equipment exception to the pollution exclusion, rendering that exception meaningless. So why doesn't that conflict indicate that the indoor air quality exclusion is ambiguous? So, I mean, you know, any time we have to spend this much time on things, you have to wonder how clear it is. Well, the courts are all over the place. Well, they were all over the case on a former version of the building. Well, and then you guys or somebody starts writing the policies and they introduce the word irritant. I mean, I read that. I couldn't believe it. I mean, I just, I mean, I'm looking for gas. I'm looking for anything. But it is not. It's a gaseous irritant. That's really clear, isn't it? I mean, you go, the EPA defines carbon monoxide in a lot of ways. There are all kinds of definitions of the, of whether carbon monoxide is a pollutant, whether it's an irritant, whether it's a contaminant, whether it's a poison. There's a lot of words you could choose, it seems to me. I don't mean to fault you for it, for gosh sakes. You're a good lawyer doing a good job, but. And I'd like to answer Judge Callahan's question about the two exclusions. Keep in mind that in the Nautilus case, you had the policy form with the building heater exception and then an endorsement that removed the building heater exception. And a similar thing. So it's not unusual to find you're starting with the basic policy form. I think it's 16 pages long, 18 pages. And then insurance companies working with the insureds create a custom product for that insured. And in the Nautilus case, they deleted that exception. In our case, Century attached an additional exclusion, which in effect deleted that exception and also created additional exclusions. So it's not unusual that you see that. And it doesn't create an ambiguity. In fact, it clarifies the situation. You still have the fact that, as originally written, the pollution exclusion form obviously contemplates indoor pollution. Otherwise, there wouldn't be an exception for the building heater. Well, I guess going back to what Judge Lucero said, the total pollution exclusion has an exception for fumes that come from equipment used to heat the building. Why shouldn't that exception apply here when the fumes came from equipment used to heat the pool, since the pool heater was inside the building and contained in a room directly under the room where the four people died? Because I don't think it's a fair reading to construe a pool heater as equipment used to heat the building. I think commonly understood, you're thinking of the room furnace. The building furnace is equipment used to heat the building. A pool heater is equipment used to heat the pool. I think that's really common sense. I'm not saying you can stretch it and say, well, as Your Honor did, if the pool is warm, then the building will be warmed also. But it's not being used for that purpose. It's being used to heat the pool water. But anyway, pardon me. Let me ask you another question. If I find that the district court erred in finding the pollution exclusion was ambiguous when it applied to carbon monoxide, and therefore would apply to carbon monoxide, but I think that the indoor quality exclusion is ambiguous, and therefore I would find you do not win on that, and in fact the insured would win, what does that do? If I understand you, you're saying that we would win on the pollution exclusion and not the indoor air quality exclusion? We can win on one or the other or both. All it takes is one exclusion to apply. And I'll reserve the balance of my time, Your Honors. Thank you. Thank you. Good morning. Your Honor, Scott Glogovac for Casino West, the Respondent in this case. If I could start by responding to the first question, Judge Macero, that you asked my opponent, and that is doesn't this case turn on whether carbon monoxide fits one of the words in the definition of pollutants? I think that's a starting point, but I believe the issue is broader than that. We still have to have an instance or a loss that fits a traditional pollution, environmental or industrial pollution incident. Well, why? I don't understand. I mean, if you win under the plain language, why do you have to move to the next level of ambiguity to win? In case Your Honor was inclined to conclude that carbon monoxide. I'm not inclined to conclude anything. I'm just trying to analyze the case. And I said, well, you're the plaintiff. Well, in a way, you're the. Well, we were sued for deck remission. But we're the proponent of coverage. Right. You want to be covered. Yes, sir. Well, you bought the policy for it, you thought. Now, is there a pool exclusion on the policy? No. The pool is covered. Yes. Well, but if a carbon monoxide from a heater was not intended to be, if from a heater was not intended to be excluded under the pollution exclusion, why would the exception for building heaters have been added to the policy? Well, I think that the, Mr. Galt seems to conflate adding the building heater exclusion to. Well, we can't just make it surplusage. It isn't surplusage, Your Honor, because you could have a situation where a building heater malfunctions in an industrial plant. And it clarifies, you know, I think one of the cases used the example of a tire manufacturing plant where a building heater malfunctions or there's a hostile fire under one of the other exclusions. That's the traditional environmental pollution type of setting, a manufacturing plant as opposed to a small motel in Urington, Nevada. So it wouldn't be surplusage. It would just clarify that in that instance the exclusion does not apply. So it isn't surplusage. And to get back to what you were saying, Your Honor, I didn't mean to suggest that you were inclined to do anything with it, but if it's the inclination of the panel to have this case turn on the notion that carbon monoxide is an irritant within the meaning of the policy, I simply wanted to get back to that. Well, I'm saying if it doesn't appear under the dictionary terms. Right. That it is an irritant. If I look at the definition of carbon monoxide, it says that carbon monoxide is toxic, which would make it a toxin. An irritant is basically a diluted corrosive, which carbon monoxide is, I don't know that it's corrosive. So I guess maybe I've taken too much chemistry, but the point is when I look at words, I, you know, they have meanings. And the word gaseous or thermal irritant is not necessarily clear in my mind that that's carbon monoxide, includes carbon monoxide. And so it seemed to me that if it's clear that it isn't an irritant, then it seems to me that you win. I agree, Your Honor, and I wasn't quarreling with that. I was just giving a larger context. Let me ask you a question.  The thing that worries me is I focused on the same stuff as did my colleague. But if I look at the ordinary meaning of irritant, then I have to go to Nautilus. The Fifth Circuit said the ordinary meaning of irritant is an agent by which irritation is produced by a chemical. Then the Eighth Circuit said carbon monoxide is an irritant and a health standard because of its irritant effects on the human body. Well, so therefore it is an irritant. If I say it isn't, then I've got to go against my sister's circuits. So why am I going to say it isn't an irritant? And that's part of the reason why I was engaging in the discussion that I was with Ms. Arnn. Well, I understand why you were engaging. Now you're after me. I understand that. Because I'm going, why would I go against my sister's circuits? Whatever this Court does in this case, you're going against a sister something. Well, what sister circuit says it isn't an irritant? I can't cite to Your Honor a Federal Circuit court case that says it's not an irritant. But there are circuit court and state highest courts of appeal in states all over the country that fall on different sides of this issue. So why shouldn't we certify it? And I don't see a good reason not to certify it, Your Honor. Does Nevada, you know, California, certain states take certifications more than other states. Right. That California didn't use to certify, didn't take certifications too much. They seem to be taking them a little more now. But the, like the State of Washington, they regularly will take certifications. What about, what about Nevada? What do they do? Generally speaking, Nevada will take certifications. Particularly if counsel agree, but I, you know, I don't think we have that agreement here. Did either of you move below to certify? No. Did not happen. There was some discussion with the trial judge about whether he should do that, but. Well, it seems like this has the type of facts that, you know, that they're not going to look the other way. I mean, four people go to sleep at night and then they don't wake up. And so it, you know, it catches people's attention, if nothing else. But it's still, it's a much broader implication. They've got to, you know, tell us. Yeah. I don't disagree with that. And when I heard you ask Mr. Galt that question, my thought was I can't say there's no good reason to, Your Honor. Let me ask you here. Isn't it the fact that reading the evidence here, the carbon monoxide caused cerebral edema and blood. And I'm only looking at my notes because I can't say these things. They're too big. Blood, carbohomo, carboxyhemoglobin saturation. I think you're reading from the autopsy. Yeah, that's what I'm saying. Aren't those irritant effects on the human body? I think those are far more egregious effects on the human body than the notion of irritant. A toxic probably would be a fairer description of what those effects are. So just because they might irritate but they do more, I'm to throw out the definition of irritant? I think you should not throw it out, but you should construe it accordingly. I think toxic is a far stronger term than irritant. At least that's simply my view, Your Honor. Well, can't you be both an irritant and a toxin? I suppose that is possible, Your Honor. So if I read the clear language of this policy, since it talks about irritants, even though it is also toxin, it can certainly fall in the last, smoke, vapor, soot, fumes, acids, glycolides, chemicals. Well, does that make it ambiguous since we can't decide whether it's a toxin or an irritant? No. My question is, can it be both? Is there not a subset that can be both and, therefore, under the plain language, haven't I got to give a pollutant exclusion? No, Your Honor, and for a couple of reasons. Number one, no to the haven't you have to. I'm saying no to affirmance and no to application. I'm sure you're saying no to affirmance. Not no to the notion can it be both that you've asked about. I'm not saying no to that. I think you already conceded that's possible. But I go back, Your Honor, to the setting in which the loss must occur, and that's really the reason why you have so much division among the courts. A large majority of the courts, I would say, tend to put the pollution exclusion in the proper context of traditional environmental or industrial pollution as opposed to an incident like this in a motel. Well, but. And so I think that's number one. And then secondly, Your Honor, if I could, and it's a point I really wanted to make in response to all three judges' questions. Okay. And that is that look at the dates on these pollution exclusion decisions. They go all the way back into the early 80s. The insurance industry has had an opportunity. And I'm talking about carbon monoxide cases. The insurance industry has had at least 30 years to respond to this circumstance, and they haven't responded to the circumstance. They could have clarified it. They hold all the cards here. The one thing that they've done in the last 30 years is add the building heater exclusion. That's all. But was that meant to say that any kind of indoor gas from whatever source it comes from or gaseous material from whatever source it comes from is excluded? I think that the insurance industry probably looked at this pollution exclusion at some point and said, we're having trouble with these carbon monoxide indoor cases and other indoor air cases. But if we really make this exclusion say what we want it to say, we're going to admit we were wrong all along. And so they got a little cute and added this building heater exclusion in there so that, and with all due respect to Mr. Galt, he's a fine attorney, they can make the kind of argument that he's making today. They've had the opportunity to clarify this, did not do it. Let me ask you this. If we say, because let's say the panel's in disagreement. Some say it's ambiguous. Some say it's not ambiguous. Some say let's certify because it appears ambiguous. If it's ambiguous, don't we have to affirm or can we certify? No, no. If it's, if you find the pollution exclusion to be ambiguous, that's the same conclusion that the trial judge reached. I'm sorry. Yes, you would affirm. You would have to affirm. And because if it's ambiguous, we construe it against the ambiguity against the insurer. A rule of Nevada law. Correct. So the only, if we did certify, the question would be what? Is it ambiguous? The question would be is the plain language, what does the plain language say? I think along those lines, yes, Your Honor. Or is the language plain or is the language not plain? Yeah, that could be. It could be any combination of them. All right. Good enough. Unless there's further questions, those are the points I wanted to make to the Court. There do not appear to be. Thank you. Thank you, Your Honor. Thank you. Thank you, Your Honor. My client certainly wasn't attempting to be cute in drafting this policy. And they did endeavor to be clear. And that is why Century crafted its own additional exclusion. Well, let me ask you this on the doctrine of reasonable expectations, which is brief to some degree. You have a commercial operation, a hotel, a motel, in this case a casino. They go to the insurance agent and they say, we want to buy a policy to insure us. And do you want to exclude the pool? Nope, we want the pool included. You want to include X, Y, Z, whatever. And they say, oh, by the way, you're not covered for pollution. Wouldn't the average consumer say pollution? That means stuff like stuff that comes from the road, perhaps somebody who's allergic to aerosol sprays or something like that. You've got a gas tank that you removed and it's seeping in the ground or something like that. Isn't that normally what pollution is? If that's the communication between the parties, perhaps. But that's not what the communication was here. Century said this is the policy we intend to sell you. This is what you want to buy with all of its pages in it, all of its definitions. It wasn't just we'll cover your pool, but we won't cover pollution. It went into detail. And it also said, in addition to the exclusion that you'll find in all policies, pretty much, the pollution exclusion, which may be modified, as we saw in the Nautilus case, with the removal of some exceptions to it, we will also exclude an additional category of claims. And that's this additional endorsement that goes beyond irritant and says, clearly, we're excluding bottle injury arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating, pathogenic, or allergen quality or characteristic of indoor air. Now, keep in mind that these seem to me to cover all kinds of these, air sprays, hair sprays, deodorants, all kinds of stuff. Keep in mind that the industry had seen an evolution from asbestos claims to silicate claims to mold claims to lead paint claims to radon claims. They didn't know what was coming next. But the insurance is not a gambling business, unlike a casino. Premiums are set based on experience. And to the pollution exclusion, what was the state of the law with respect to these types of policies? In a hotel, if somebody died of carbon monoxide poisoning at Tahoe or somewhere, where the guest of the hotel died, was the hotel covered or not for carbon monoxide deaths? The general insuring agreement, such a claim would be covered assuming it wasn't expected or intended injury. But you have to then look... So they used to be covered and then at some point the pollution exclusion applied and it's now your position that it's no longer covered? Correct. All right. Let me ask you... With some exceptions. If the carbon monoxide is emitted from a equipment used to heat the building, then it's covered unless that exception has been removed as it was in the Nautilus case or unless there's an additional exclusion such as in our case. That's where... Doesn't the reasonable expectation doctrine only apply when the policy in Nevada, when the insurance policy provision is ambiguous? That's exactly right. You don't start by applying the reasonable expectations. You start by looking at the contract and construing it according to all the normal rules of contract instruction, giving meaning to each part, not leaving any part surplusage. And only if, having applied those usual rules, you're stuck with a quandary, then you revert to the doctrine of construing it against the drafter or applying reasonable expectations. Right. All right. I think we have our questions answered. Your time has expired. Thank you both for your argument. This matter will stand submitted. Well presented. The last matter on calendar is Thomas Speer v. City of North Las Vegas, 17466. That matter was dismissed by the parties on 12-11. This court will stand adjourned until tomorrow morning at 9 o'clock. All rise.
judges: Lucero, Callahan, Smith